UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

KEVIN REYES,

        Plaintiff,

vs.                                       **COMPLAINT**

STATE OF NEW YORK, DIVISION OF STATE POLICE,

        Defendant.
------------------------------------------------------------------x

This is a Title VII case alleging that plaintiff's employer intentionally failed to promote him on account of his national origin, subjected him to inferior terms and conditions of employment on the same basis, ultimately causing his constructive discharged.

**PARTIES**

1. Plaintiff Kevin Reyes is a resident of the State of New York and of legal age. He is of Hispanic national origin.

2. Defendant State of New York, Division of State Police is a duly organized unit of government which may sue and be sued and is located in Albany, New York.

**JURISDICTION**

3. Plaintiff timely filed a charge of unlawful discrimination with the New York State Division of Human Rights and his charge was dual filed with the EEOC through number 525-2020-00595. *See* Exhibit 1 hereto.

5. On January 23, 2023, the EEOC issued a right to sue letter to plaintiff. *See* Exhibit 2 hereto.

1

6. Plaintiff initiates this action within 90 days of his receipt of the right to sue letter.

7. Accordingly, this Court has jurisdiction over this matter pursuant to 42 U.S.C. section 2000[e], et seq.

**STATEMENT OF FACTS**

8. Plaintiff commenced working for defendant on November 2, 1998.

9. Plaintiff was promoted to the rank of lieutenant in 2013 and served thereafter as the only Hispanic lieutenant west of Albany [an area of nearly 40 Counties].

10. As a lieutenant, plaintiff received excellent performance reviews.

11. Plaintiff's super-ordinates highly recommended him for promotion to the rank of captain.

12. His immediate supervisor during his first four years as a lieutenant wrote, "Lieutenant Kevin Reyes would be an outstanding choice for the position of Captain. He has a positive attitude, whose main priority is completing the mission of the New York State Police. Lieutenant Reyes would excel as a either a Uniform or BCI Captain."

13. But despite such a reference and plaintiff's willingness to relocate anywhere in the State, between 2016-2020, defendant repeatedly passed plaintiff over for promotion to the rank of Captain while it made forty-one promotions to this rank.

14. Instead, defendant promoted white males with less experience and less time in rank than he had, namely James Thompson, Brian Ratajcak,

2

David Martek, Brian Webster, Sam Spezio, David Forsyth, Pete Cirigliano, Vincent Lightcap, and Rick Landahl, were all promoted to captain though at one time plaintiff had supervised each of them.

15. Between 2015-2019, defendant assigned plaintiff to serve as the narcotics lieutenant for the western region of New York State.

16. A December 2018 bi-annual 2018 of the CNET-Western operation reported that plaintiff run the unit in an exemplary manner and that it led the state in arrests, drug seizures, and cases.

17. The same audit stated, "In March of 2015, he [plaintiff] took command of CNET-Western. Lieutenant Reyes has been active in developing and maintaining relationships with both NYSP units and details as well as with other law enforcement agencies..."

18. The audit further concluded, "the CNET Western response to criminal activity and drug enforcement appears outstanding" and "the financial oversight of CNET Western is managed excellently."

19. Under "Summary of Deficiencies/Actions to be Taken," the audit concluded, "The overall audit of the CNET-Western unit revealed it as running exemplary."

20. The following month, despite the significant success plaintiff had in this position, defendant re-assigned him to a less prestigious and visible position with less critical administrative duties and replaced him with a white male who lacked his experience running a major drug interdiction unit.

21. Before his re-assignment, at his initiative, plaintiff sought a meeting with his superiors, Major Kennedy and Captain Hall.

22. Plaintiff requested this meeting because he had heard that he was going to be removed from the CNET-Western unit.

24. At this meeting, plaintiff asked Major Kennedy if he was planning any personnel moves; his supervisor, Major Kennedy, replied, "No, Kevin, I don't foresee anything changing as the unit is running great and you have a great relationship with the troop and other agencies."

25. However, in justifying plaintiff's removal from CNET-Western, Major Kennedy falsely claimed that some of plaintiff's subordinate investigators were insufficiently active when compared with their peers in other drug enforcement units within the division's Bureau of Criminal Investigations, a matter he never raised with plaintiff.

26. Major Kennedy used such baseless claims against plaintiff and so maligned plaintiff's name and reputation.

27. The Caucasian male who replaced plaintiff as lieutenant for narcotics was much less experienced and had much less time in rank than plaintiff did.

28. Defendant so replaced plaintiff without good cause, though this adverse action prompted plaintiff's co-workers to conclude that he had engaged in some misconduct.

29. During the so-called reorganization which allegedly caused plaintiff's removal from his position, defendant left all the Caucasian Lieutenants then

managing CNET units in charge of the new units and only transferred two such commanders, plaintiff and one other lieutenant, an African American.

30. In September 2019, plaintiff became Lieutenant for the Office of Emergency Management–West, a position in which he continued to report to Major Kennedy.

31. After so reassigning plaintiff, Major Kennedy advised him that he would be transferred from his predecessor's office at the DOT building in downtown Buffalo to a converted broom closet at troop headquarters.

32. In this new administrative assignment, Major Kennedy required plaintiff to submit his schedule for the week, a form of micro-management to which Kennedy did not subject the Caucasian lieutenant [Kevin Barnas] who plaintiff replaced.

33. In light of this reassignment, the disparate treatment by Major Kennedy, and defendant's repeated failure to promote him, in January 2020, plaintiff complained to his union that he had been discriminated against on the basis of his national origin and so addressed the entire PBAS Board on March 5, 2020.

34. During his presentations, plaintiff asked the union to file a state EEO charge against Major Kennedy, Captain Hall, and New York State Police.

35. Defendant's agents soon learned of this complaint.

36. In this context, defendant decided to elevate a minor personnel complaint and use it as a fulcrum to force plaintiff's retirement.

37. Defendant placed Major Kennedy in charge of the investigation arising out of plaintiff's alleged off-duty misconduct though its managers knew that plaintiff had a pending EEO charge against him.

38. In threatening substantial punishment against him for this minor event if he did not retire, defendant both reprised against plaintiff for his complaint to the union alleging national origin discrimination and engaged in further national origin related discrimination since similarly situated Caucasian members who committed more serious offenses received less harsh sanctions and were not pressured to resign from the Division.

39. Faced with the prospect of disparate and harsh sanction for a minor action, following his transfer to inferior duties and the pattern of failed promotions, on July 25, 2020, plaintiff retired from the State Police.

40. By and through the practices set forth above, defendant caused plaintiff to [a] prematurely end his career as a state trooper; [b] experience substantial humiliation and emotional distress; [c] lose salary and benefits, and [d] incur substantial expenses litigating against the defendant.

## AS AND FOR A FIRST CAUSE OF ACTION

41. Plaintiff incorporates paragraphs 1-40 as if fully set forth herein.

42. By failing to promote plaintiff as a captain in 2019-20, defendant intentionally discriminated against him on the basis of his national origin in violation of Title VII of the Civil Rights Act of 1964.

## AS AND FOR A SECOND CAUSE OF ACTION

43. Plaintiff incorporates paras. 1-42 as if set fully set forth herein.

6

44. By intentionally creating an objectively hostile work environment on the basis of his national origin, defendant intentionally and constructively discharged plaintiff from employment in violation of Title VII of the Civil Rights Act of 1964.

**WHEREFORE,** plaintiff prays that [a] this Honorable Court accept jurisdiction in this matter; [b] award to plaintiff compensatory damages, including for back and front pay and benefits and for emotional distress, pain, and suffering and humiliation; [c] award plaintiff the reasonably incurred attorneys' fees and litigation costs, and [d] enter other order the interests of justice and equity require.

Dated: March 17, 2023

Yours, etc.,

MICHAEL H. SUSSMAN [3497]

SUSSMAN & GOLDMAN
PO BOX 1005
1 RAILROAD AVENUE, STE. 3
GOSHEN, NY 10924
(845)-294-3991
Counsel for Plaintiff Kevin Reyes